UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMETRIUS DARELL CLARK,

                Petitioner,

v.

SHERMAN CAMPBELL,[1]

                Respondent.

_____/

Case No. 2:17-cv-11885

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING THE
PETITION FOR A WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY,
<u>AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS</u>**

Petitioner Demetrius Darell Clark is confined in a Michigan prison and petitioned the Court for a writ of habeas corpus under 28 U.S.C. § 2254. Clark's imprisonment stemmed from convictions for assault with intent to commit great bodily harm less than murder, in violation of Mich. Comp. Laws § 750.84(1); armed robbery, in violation of Mich. Comp. Laws § 750.529; carrying a concealed weapon, in violation of Mich. Comp. Laws § 750.227(2); felon-in-possession, in violation of Mich. Comp. Laws § 750.224f; and felony-firearm, in violation of Mich. Comp. Laws § 750.227b.[2] For the reasons below, the Court will deny Clark's petition for a writ of habeas corpus.

_____

[1] The Court amends the caption to reflect the current warden of the facility where Clark is incarcerated.

[2] The trial court sentenced Mr. Clark as a second habitual offender—pursuant to Mich. Comp. Laws § 769.10—"to concurrent prison terms of 5 to 15 years for the

# BACKGROUND

Clark was convicted after being tried jointly with his co-defendants—Darryl Anthony Clark and Krystal Denise Clark—before a single jury. The convictions arose from a robbery at 15174 Grayfield Street in Detroit, Michigan, and the subsequent assault of a state trooper. The Michigan Court of Appeals detailed the testimony of five witnesses that was admitted against Clark. First,

> Edward Taschereau who lived at 15174 Grayfield, recounted at trial the details of the forced entry into his residence on May 8, 2010, and identified Darryl Clark as one of the men who had come inside, held a gun to his head, and with someone resembling Demetrius Clark ransacked the house, stole property, and ran to a black car.

*Clark*, 2014 WL 354623, at *2. Second, Michigan State Trooper Jonathan Henry testified about:

> (a) his observations of several men running across Fenkell Street from Grayfield, Kevin Woods (another armed robbery participant) getting inside a silver van, Darryl Clark firing two gunshots while standing next to the passenger door of a black Monte Carlo, and Darryl and Demetrius Clark getting inside the Monte Carlo, and (b) his 14 or 15-minute pursuit of the black Monte Carlo, during which he observed Demetrius Clark lean out the driver's side window and twice fire multiple shots at Henry's vehicle and a rifle barrel appear from the passenger's side window where Darryl Clark got into the car.

*Id.* Third, Michigan State Police laboratory technicians provided testimony "that they identified Darryl Clark's fingerprint on a bottle on the floor of the black

---

[assault with intent to commit great bodily harm less than murder] conviction, 17 to 30 years for the armed robbery conviction, 2 to 5 years for the [carrying a concealed weapon] conviction, and 2 to 7 years for the felon-in-possession conviction. He was sentenced to a consecutive prison term of two years for the felony-firearm conviction." *People v. Clark*, Nos. 305552, 305601, 305681, 2014 WL 354623, at *1 n.3 (Mich. Ct. App. Jan. 30, 2014).

Monte Carlo's front passenger seat, and blood with a DNA profile matching Demetrius Clark's in the Monte Carlo's back seat." *Id.*

Fourth, Virginia Gonzales, an accomplice of the Clarks, testified about eight different observations:

> (a) when she saw Darryl Clark leave his mother's house on May 8, 2010, he had a silver 0.22–caliber revolver in his waistband that he covered with his shirt and carried into the Monte Carlo, (b) she drove Darryl and Demetrius Clark to a parking lot near the robbery scene, where Krystal and Darryl Clark discussed the robbery target, (c) at Darryl Clark's direction, she dropped Woods off in an alley near the house and drove down Grayfield in the opposite direction of the house, a vantage point from which she observed Darryl Clark leave the car holding his gun, run across Fenkell with Demetrius Clark, approach the house and go inside, (d) she saw Darryl and Demetrius Clark leave the house and run toward the Monte Carlo, Demetrius Clark get into her rear driver's side seat while carrying a hand safe and a long gun, and heard two or three gunshots on the front passenger's side, where Darryl Clark then got into the car, (e) Darryl Clark told Gonzales to drive, which she did at approximately 70 miles per hour through mostly residential neighborhoods, (f) while driving she observed Darryl Clark shoot at the black Suburban (Henry's vehicle) that was following the Monte Carlo, heard gunshots from directly behind her seat immediately after seeing Demetrius Clark lean out the driver's side window, and heard Demetrius Clark calling Woods to advise that he and Darryl Clark had used their ammunition and Woods had to do something; (g) after the Monte Carlo got away from the black Suburban, she watched Darryl Clark reload his gun at his mother's house, saw Demetrius Clark retrieve a Play Station from Krystal Clark's van and a hand safe being opened at another sister's house, and heard Darryl and Demetrius Clark complain to Krystal Clark that the robbery had been a set up, and (h) Darryl and Krystal Clark advised Gonzales the next day to turn herself in to the police and say she had not seen Darryl or Demetrius Clark.

*Id.* Finally, "Darryl and Demetrius Clark stipulated that on May 8, 2010, they had prior felony convictions that precluded their right to possess firearms." *Id.*

The Michigan Supreme Court denied Clark leave to appeal his convictions. *People v. Clark*, 497 Mich. 853 (2014).

Clark filed a post-conviction motion for relief from judgment with the trial court pursuant to Michigan Court Rule 6.500, which was denied. *See* ECF 6-21 (state trial court decision denying post-conviction motion). The Michigan Court of Appeals denied Clark's delayed application for leave to appeal the trial court's decision. *See* ECF 6-22. The Michigan Supreme Court subsequently denied Clark leave to appeal. *People v. Clark*, 500 Mich. 880 (2016).

On appeal, through counsel, Clark raised four claims.

I. Mr. Clark was denied his state and federal constitutional right[s] to due process when the jury observed him in jail clothing on the first day of trial.

II. The trial court committed plain error in failing to instruct the jury that it should view with caution the testimony of Virginia Gonzales, who was an undisputed accomplice. This denied Mr. Clark his state and federal right[s] to present a defense.

III. Mr. Clark was denied his state and federal constitutional right[s] to the effective assistance of counsel, where trial counsel failed to request a cautionary instruction on the unreliability of accomplice testimony.

IV. The trial court violated Clark's due process rights when it refused [his] request to discharge defense counsel after the attorney-client relationship had broken down.

ECF 1, PgID 2. In his post-conviction motion for relief from judgment, Clark raised the following five claims:

[V]. The trial court denied [Clark] his right to a fair and impartial jury by not dismissing a juror that the court knew was a bias[ed] juror and [Clark] was denied his right to the effective assistance of trial counsel for failing to further question, dismiss for cause or use a peremptory challenge to dismiss the same juror.

[VI]. There was insufficient evidence at trial to convict [Clark] of carrying a concealed weapon and his convictions are in violation of his [federal constitutional rights under the Fifth and Fourteenth

Amendments and his Michigan constitutional rights pursuant to Art. 1, § 17].

[VII]. Where the jury could convict [Clark] of one offense based on two statutory theories of culpability, he was denied his constitutional right to due process and a unanimous jury where both theories were not made a choice on the verdict form and to the effective assistance of counsel for failing to object to the verdict form [pursuant to the Sixth and Fourteenth Amendments to the United States Constitution].

[VIII]. The sentence in this case, which was based on improperly scored legislative sentencing guidelines and incorrect sentencing information, was violative of the mandates of the guidelines and federal and state constitution[s]; and trial counsel was ineffective for failing to object [pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and Michigan Constitution Art. 1, §§ 17, 20].

[IX]. [Clark] was denied the effective assistance of counsel guaranteed by the federal constitution where his appellate counsel neglected strong and critical issues which must be seen as significant and obvious.

*Id.* at 3–4. When Clark appealed the state trial court's denial of his motion for relief from judgment, Clark raised three claims effectively identical to those raised in his motion for relief from judgment. *Compare* ECF 1, PgID 4 (roman numerals II, III, and IV) *with id.* at 3 (roman numerals I, III, and IV). Clark also raised five new claims:

[X]. [Clark] was denied a fair trial as guaranteed under both federal and state constitutions, when the trial court failed to control [his] criminal proceedings by allowing [him] to be convicted and sentenced to a crime unknown to the laws of the State of Michigan. . . .

[XI]. [Clark] was denied his constitutional and fundamental due process protections to a fair trial guaranteed under both state and federal constitutions, when the prosecution committed both constitutional error and violated the public trust when it refused to protect [Clark's] due process rights, which grievous error mandates [Clark's] immediate release from custody and a bar to re-prosecution.

[XII]. Petitioner was denied his fundamental due process protections as guaranteed under both federal and state constitutions, when defense counsel abandoned [Clark] in his representation, as enumerated herein, the result of which is structural error.

[XIII]. [Clark] was denied his fundamental and constitutional right to a fair trial as guaranteed under both state and federal constitutions, when appellate counsel effectively abandoned petitioner on his appeal of right, and which constitutes structural error.

[XIV]. Relief from judgment should be granted where [Clark] can establish "good cause" for not bringing his appellate issue[s] before the court previously, simply because all the officer[s] of the court involved in [Clark's] criminal proceedings knew or should have known that the felony charge [Mich. Comp. Laws § 750.227] lodged against petitioner had no bearing on his case whatsoever; and no one corrected the error until now.

ECF 1, PgID 4–5. The Court will address each claim.

## STANDARD OF REVIEW

The Court may not grant habeas relief to a state prisoner unless his claims were adjudicated on the merits and the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

The state court unreasonably applies Supreme Court precedent not when its application of precedent is merely "incorrect or erroneous" but when its application of precedent is "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 654 (2004)).

A federal court reviews only whether a state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). A state court need not cite to or be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Decisions by lower federal courts "may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)).

Finally, a federal habeas court presumes the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may successfully rebut the presumption only by clear and convincing evidence. *Id.*

## DISCUSSION

I.    <u>Claim I: Due Process Violation Because Jury Viewed Clark in Jail Clothing</u>

Clark first alleges that his due process rights were violated when, on the first day of trial, he was forced to wear jail clothing. ECF 1, PgID 8–12. A criminal

defendant's fundamental right to a fair trial includes appearing in "civilian clothes rather than prison clothing." *Clark*, 2014 WL 354623, at *1 (quoting *People v. Turner*, 144 Mich. App. 107, 109 (1985)). A state trial court's decision not to allow a defendant to appear in civilian clothing will not be overturned unless a defendant shows that he did not need to appear in jail clothing or "that prejudice has resulted." *Id.* (quoting *People v. Meyers (On Remand)*, 124 Mich. App. 148, 164 (1983)). The Michigan Court of Appeals determined that the state trial court did not abuse its discretion by denying Clark the ability to change clothes because the state trial judge believed he had "opted against changing out of prison clothing." *Id.* at *2.

On habeas review, a federal district court can proceed directly to the harmless error analysis "without first reviewing the merits of the claims, when it is in the interest of judicial economy and brevity to do so." *Dittrich v. Woods*, 602 F. Supp. 2d 802, 809 (E.D. Mich. 2009) (citation omitted), *aff'd in part and rev'd in part on other grounds*, 419 F. App'x 572 (6th Cir. 2011).

Substantial evidence was admitted demonstrating Clark's guilt for the crimes of which he was convicted. *See Clark*, 2014 WL 354623, at *2 (state appellate court decision detailing the evidence admitted against Clark). "The factual record in the state trial court . . . contains such overwhelming proofs of [Clark's] guilt, that any error on the part of the [state] trial judge" in handling Clark's clothing during the first day of trial "must be regarded as harmless beyond reasonable doubt." *Mitchell v. Engle*, 634 F.2d 353, 354 (6th Cir. 1980).

Based on the evidence linking Clark to his co-defendants and the crime, his flight from the scene in the car used during the robbery, and Clark's attempts to flee the police, the Michigan Court of Appeals reasonably determined that standing trial in jail clothing on the first day was harmless error. The Court does not have "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict." *Davis v. Ayala*, 135 S. C.t 2187, 2198 (2015). Clark is not entitled to habeas relief on his first claim.

## II.     Claims II and III: The Jury Instruction and Related Ineffective Assistance of Trial Counsel

Clark alleges that the state trial court judge committed plain error by failing to give cautionary instructions on the unreliability of accomplice testimony—particularly the testimony of Virginia Gonzales. ECF 1, PgID 13–17. Relatedly, Clark maintains that his trial counsel provided ineffective assistance because he failed to request a cautionary instruction on the reliability of Gonzales's testimony. *Id.* at 18–20.

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is greater than the showing required in a direct appeal." *Terr v. Bock*, 208 F. Supp. 2d 780, 793 (E.D. Mich. 2002). On habeas review, the Court considers "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). It is not enough that the instruction is "merely" "undesirable, erroneous, or even universally condemned." *Id.*

(quoting *Cupp*, 414 U.S. at 146). Moreover, an omitted or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Id.* at 155; *see also Bock*, 208 F. Supp. 2d at 793. The Court considers the instructions "taken as a whole." *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000).

A trial court's failure to give a special cautionary instruction on accomplice testimony is not reversible error, so long as the court gave the jury a general instruction on witness credibility and on the various factors that it should consider in weighing the testimony of various witnesses. *See United States v. Carr*, 5 F.3d 986, 992 (6th Cir. 1993); *see also Mitchell*, 209 at 883 ("We have since followed *Carr* in not requiring accomplice instructions as a general matter.").

Here, the state trial judge did not specifically instruct the jurors on the unreliability of accomplice testimony. He did, however, instruct the jurors on the factors to consider when evaluating Gonzales's and other witnesses' testimonies. After the prosecutor's direct examination of Gonzales, the trial court stated:

> You have heard testimony that a witness, Virginia Maria Gonzales, made an agreement with the prosecutor about charges against her in exchange for her testimony in this trial.
>
> You have also heard evidence that Miss Gonzales faced the possibility of life in prison or any number of years up to life, but with the possibility of parole with guidelines of one hundred and eight months to one hundred and eighty months before the agreement.
>
> Miss Gonzales was allowed to plead guilty to a five year felony with guidelines of zero to seventeen months or probation with one year in the Wayne County Jail after the agreement as a result of those charges. You are here to consider this evidence only as it relates to Miss Gonzales'[s] credibility and as it may tend to show Miss Gonzales'[s] bias or self interest.

*Clark*, 2014 WL 354623, at *6; *see also* ECF 6-11, PgID 1336–37 (trial transcript); ECF 6-15, PgID 2330–31 (repeating the instruction on the final day of trial).

Additionally, the trial judge's final instruction to the jurors addressed witness credibility and the factors that the jury should use in assessing witnesses' credibility. ECF 6-15, PgID 2305–07.

The trial court's failure to specifically instruct the jury regarding the credibility of accomplice witness testimony did not violate Clark's right due process rights. The trial court instructed the jury on witness credibility generally—including the various factors to consider—and twice provided specific instructions regarding Gonzales's testimony. *See, e.g.*, *Latimer v. Burt*, 98 F. App'x 427, 432–33 (6th Cir. 2004). Any potential error is not reversible and does not justify habeas relief.

Clark also argues that counsel was ineffective for failing to request the cautionary instructions on accomplice witnesses.

To prevail on his ineffective assistance of counsel claim, Clark "must show that the state court's conclusion was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984)." *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). Clark must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Petitioner must

demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Ordinarily, defense counsel's development of the record of an accomplice witness's "unsavory past and [her] motive for naming the defendant as [her] companion in crime" preclude a finding of ineffective assistance of counsel. *Krist v. Foltz*, 804 F.2d 944, 947 (6th Cir. 1986).

In rejecting Clark's instructional-error claim, the Michigan Court of Appeals noted the following:

> Over the course of three days at trial, the prosecutor questioned Gonzales at length and counsel for all three defendants cross-examined and recross-examined Gonzales, during which they touched on relevant topics including the following: Gonzales had a three-year friendship and ultimately romantic relationship with Darryl Clark; she picked up Darryl Clark from prison eight days before the Grayfield robbery took place; on May 8, 2010, even after learning of the plan to rob the house on Grayfield, she continued following Darryl Clark's directions about where to drop off Woods, repositioning the Monte Carlo, and speeding through mostly residential areas at approximately 70 miles per hour; her decision to turn herself in to the police and the less-than-candid statement she gave on May 9, 2010; her receipt of bail money from the Clarks, after which she spent weeks living with the Clark family and Darryl Clark impregnated her; her alleged motivation to implicate defendants when her personal relationship with Darryl Clark seemed unlikely to continue; and her acceptance of

the prosecutor's offer that in exchange for her truthful testimony against defendants, she could plead guilty to being an accessory after the fact, and the prosecutor would dismiss charges of armed robbery, several assault counts, and first-degree home invasion. During closing arguments, all three defense attorneys further described Gonzales as a liar and otherwise attacked Gonzales's credibility, including on the basis of her plea agreement.

*People v. Clark*, 2014 WL 354623, at *6.

Here, during cross-examination and closing arguments, Clark's defense counsel fully brought out Gonzales's involvement in the crimes, inconsistencies between her testimony and the other testimony and evidence, and her motive for testifying against Clark and the other co-defendants. Counsel's failure to request a specific instruction on accomplice testimony "was insignificant," did not rise to the level of ineffective assistance of counsel, and would not entitle Clark to habeas relief. *Krist*, 804 F.2d at 947.

III.   Claim IV: The Substitution of Counsel Claim

Clark alleges that the state trial court judge violated his due process rights by refusing his request to discharge his trial counsel due to a breakdown in the attorney-client relationship. ECF 1, PgID 21–23.

The Sixth Amendment "right to the assistance of counsel does not guarantee that a criminal defendant will be represented by a particular attorney." *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1351 (6th Cir. 1993) (citing *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989)). "A criminal defendant who desires and is financially able to retain his own counsel 'should be afforded a fair opportunity to secure counsel of his own choice.'" *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Indeed,

"[t]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quoting *Caplin & Drysdale*, 491 U.S. at 624–25). A criminal defendant's right to choose his own attorney is qualified. *Serra*, 4 F.3d at 1351 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)). Stated differently, the right to counsel of one's own choice is not absolute. *See Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." *Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir. 1984); *see also Gonzalez-Lopez*, 548 U.S. at 151–52) ("We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar.") (internal citations omitted). Finally, "the right to counsel of choice may not be used to unreasonably delay trial." *Linton v. Perini*, 656 F.2d 207, 209 (6th Cir. 1981).

A court reviewing a trial court's denial of a motion for substitution of counsel must consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict." *Martel v. Clair*, 565 U.S. 648, 662 (2012). The Court defers to the trial court's fact-specific decision and reviews only for an abuse of discretion. *Id.* at 663–64.

Ordinarily, a trial court cannot properly resolve motions to substitute counsel "without probing why a defendant wants a new lawyer." *Id.* at 664. But a trial court does not abuse its discretion in denying a motion for substitution of counsel—even without conducting the appropriate inquiry—if the motion was untimely and the court was ready to render a decision in the case. *Id.* at 664–66.

There is no "clearly established Federal law, as determined by the Supreme Court" requiring an inquiry by a trial judge into the nature of a defendant's dissatisfaction with his attorney prior to removing counsel. *See James v. Brigano*, 470 F.3d 636, 643 (6th Cir. 2006) (reversing a grant of habeas relief because the inquiry requirement was not clearly established federal law as defined by 28 U.S.C. § 2254(d)(1)). Thus, absent a showing that a habeas petitioner received ineffective assistance of trial counsel, a state trial judge's failure to inquire into a habeas petitioner's complaints against his counsel before denying a motion for substitution of counsel would not entitle the petitioner to habeas relief. *See Peterson v. Smith,* 510 F. App'x 356, 366–67 (6th Cir. 2013).

The Michigan Court of Appeals rejected Clark's claim as follows:

> Because the record reveals that the trial court invited Demetrius Clark to elaborate on his complaints concerning his appointed counsel, we reject his "claim that the trial court failed to adequately inquire into the nature of the breakdown of the attorney-client relationship." Some of Demetrius Clark's complaints about trial counsel embodied general expressions that he lacked confidence in, or felt unhappy with, his appointed attorney, which do not give rise to adequate cause for substitution. With respect to Demetrius Clark's protestations that trial counsel "ain't [sic] doing right for my case," "ain't [sic] doing nothing [sic] for me," "ain't [sic] helping me on nothing [sic]," and "ain't [sic] came to see me or none of that [sic]," these nonspecific assertions also do not substantiate any "legitimate difference of opinion" with

15

> regard to a fundamental trial tactic. Furthermore, the record fails to disclose any inadequacy of representation, absence of diligence, or disinterest on the part of Demetrius Clark's appointed counsel. On the contrary, the record establishes that Demetrius Clark's trial counsel vigorously cross-examined the prosecutor's witnesses and pursued several reasonable defense strategies. We therefore reject this claim of error.

*Clark*, 2014 WL 354623, at *13 (internal citations omitted).

The state appellate court reasonably rejected Clark's claim. To establish good cause for substitution of counsel, a petitioner must show that "the conflict between attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996) (quoting *United States v. Iles*, 906 F.2d 1122, 1130 n.8 (6th Cir. 1990)). At trial, Clark told the trial court of his dissatisfaction with his attorney. Clark then informed the state court that he wanted to fire his current defense counsel and to retain a new lawyer. The trial court judge replied, "Well, you're welcome to do that. . . . But until that time, Mr. Parker's going to represent you. He's one of the best lawyers in this building." Clark then reiterated that he did not want the court to "keep him" as his lawyer.

Clark's statements did not evince irreconcilable conflict with his attorney or a total lack of communication. *See, e.g.*, *Adams v. Smith*, 280 F. Supp. 2d 704, 720 (E.D. Mich. 2003). A petitioner's unsupported allegation that an attorney is not supportive or failed to communicate enough does not establish that there was a serious conflict or inability to communicate that would justify the substitution of counsel. *See United States v. Justice*, 14 F. App'x 426, 430–31 (6th Cir. 2001). The record does not support

a finding that the attorney-client relationship justified substitution of counsel. *See, e.g.*, *United States v. Sullivan*, 431 F.3d 976, 981 (6th Cir. 2005). The trial court judge permitted Clark to hire a different attorney, but kept appointed counsel until Clark found a new attorney. Clark failed to move forward and to obtain substitute counsel and proceeded to trial with his defense counsel. The trial court did not abuse its discretion in denying Clark's motion to substitute counsel.

Finally, Clark is unable to show that he was prejudiced by the failure of the trial court judge to discharge his defense counsel. The trial judge permitted him to seek new counsel. And, nevertheless, Clark's trial counsel provided effective assistance. "The strained relationship" between Clark and his attorney "was not a 'complete breakdown in communication'" that prevented Clark from receiving an adequate defense. *United States v. Vazquez*, 560 F.3d 461, 468 (6th Cir. 2009). Petitioner is not entitled to habeas relief on his fourth claim.

IV.     Claim IX: Ineffective Assistance of Appellate Counsel

Clark's ninth claim alleges ineffective assistance of appellate counsel. ECF 1, PgID 44–47. An "indigent defendant" does not have "a constitutional right to compel appointed counsel to press nonfrivolous points" on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Court may not "second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client." *Id.* at 754. Nevertheless, a defendant may bring a *Strickland* claim for ineffective assistance of appellate counsel if that counsel fails "to raise a particular claim [on appeal]." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Demonstrating

appellate counsel's incompetence is difficult. *Id.* (citing *Gray v. Greer*, 800 F.2d 644, 6465 (7th Cir. 1986)).

The presumption of effective assistance of appellate counsel is overcome "only when ignored issues are clearly stronger than those presented." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Gray*, 800 F.2d at 646). Appellate counsel delivers deficient performance when he fails "to raise [an] issue, 'which was obvious on the record, and must have leaped out upon even a casual reading of [the] transcript.'" *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003) (quoting *Matire v. Wainwright*, 811 F.3d 1430, 1438 (11th Cir. 1987)). But "[a]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Clark failed to show that appellate counsel's omission of the claims raised in his post-conviction motion for relief from judgment fell outside the wide range of professionally competent assistance. Clark's appellate counsel filed a lengthy appellate brief on his behalf. *See* ECF 6-18, PgID 2412–50. Moreover, the claims raised in Clark's post-conviction motion for relief from judgment were not "obvious" or "dead-bang winners." *Meade*, 265 F. Supp. 2d at 870; *see also* ECF 6-21. The Court must reject Clark's ineffective assistance of appellate counsel claim.

V.   Procedurally Defaulted Claims

Clark's fifth through eighth claims are defaulted under Michigan Court Rule 6.508(D)(3). And his tenth through thirteenth claims are procedurally defaulted because he failed to exhaust them in state court.

A. *Procedural Default Standard.*

When "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default bars review of federal claims if the "last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, federal habeas courts presume that the unexplained order adopted the previous court's procedural bar. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Court conducts a four-part test to determine whether a habeas claim is procedurally defaulted:

> (1) whether there is a state procedural rule that is applicable to the petitioner's claim; (2) whether the petitioner failed to comply with that rule; (3) whether the procedural rule was actually enforced in petitioner's case; and (4) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005) (collecting cases).

B. *Claims V through VIII.*

A Michigan state court may not grant a defendant's motion for relief from judgment if it "alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence." Mich. Ct. R. 6.508(D)(3). An exception exists if the defendant demonstrates "good cause for failure to raise such grounds on appeal" and "actual prejudice from the alleged irregularities." Mich. Ct. R. 6.508(D)(3)(a)–(b). In relevant part, actual prejudice means either (1) that, "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal," or (2) "the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case." Mich. Ct. R. 6.508(D)(3)(b)(i), (iii).

Here, the first, second, and fourth prongs of the procedural-default test are readily satisfied. A state procedural rule—Michigan Court Rule 6.508(D)(3)—applies to Clark's claims. Clark failed to comply with the rule. And the rule provides an adequate and independent ground for the state to rely on to preclude Clark's federal constitutional claims.

The third prong—whether the state court actually enforced the procedural rule—is also met. The Michigan Supreme Court rejected Clark's application for leave to appeal because he "failed to meet the burden of establishing entitlement to relief under [Mich. Ct. R.] 6.508(D)." *Clark*, 500 Mich. at 880. The Michigan Supreme Court decision did not mention Clark's failure to raise his underlying claims in his direct

appeal as a rationale for rejecting his post-conviction claims. The Michigan Supreme Court order is ambiguous as to whether it relies on a procedural default and is thus unexplained. *See, e.g.*, *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). The Court "must therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Clark's claims. *Id.*

The Michigan Court of Appeals denied Clark's appeal of the state trial court's denial of his post-conviction motion for relief from judgment because he "allege[d] grounds for relief that could have been raised previously and he ha[d] failed to establish good cause for failing to previously raise the issues." ECF 6-22, PgID 2644 (citing Mich. Ct. R. 6.508(D)(3)(a)). Thus, Clark's post-conviction claims—claims V through VIII—are procedurally defaulted pursuant to Mich. Ct. R. 6.508(D)(3).[3] *See, e.g.*, *Ivory v. Jackson*, 509 F.3d 284, 292–93 (6th Cir. 2007); *see also Howard*, 405 F.3d at 477.

C. *Claims X through XIII.*

Clark also procedurally defaulted his tenth through thirteenth claims because he failed to properly exhaust them in state court and he no longer has a state court remedy to properly exhaust them. Clark did not raise the remaining claims in his initial motion for relief from judgment filed with the Michigan trial court. *See* ECF 6-20, PgID 2590–630.

---

[3] Clark could not have procedurally defaulted any ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F.3d at 291. For the reasons stated, however, Clark is not entitled to habeas relief on this claim.

Rather, Clark first raised the remaining claims before the Michigan Court of Appeals in his leave to appeal the trial court's denial of his motion for relief from judgment. *See* ECF 6-22, PgID 2646–47; ECF 1, PgID 4–5 (listing the claims and noting that he raised the claims before the Michigan Court of Appeals). Clark then raised his claims before the Michigan Supreme Court. *See* ECF 6-23, PgID 2719–23.

Before pursuing federal habeas relief, a habeas petitioner must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1). To properly exhaust his state-court remedies, a state prisoner must have "fairly presented his claims to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. This includes presenting the claims in a post-conviction motion before the state trial court and in his appeals of any denial of that motion to the state's appellate courts. *See Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009).

A habeas petitioner does not properly exhaust his claims "when he fails to present them in his motion for relief from judgment before the [state] trial court, but rather first raises the claim[s] when seeking leave to appeal before the Michigan Court of Appeals." *Ceasar v. Warren*, No. 06–CV–15294, 2009 WL 1543327, at *4 (E.D. Mich. June 2, 2009) (collecting cases). Clark therefore failed to properly exhaust his tenth through thirteenth claims.

D. *Exceptions to Procedural Default.*

Two exceptions to procedural default exist: (1) if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) if the prisoner can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* If a petitioner fails to show cause for his procedural default, it is unnecessary to consider the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). A petitioner's failure to show cause may be excused "in an extraordinary case," however, when a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To assert a credible claim of actual innocence, a petitioner must support "his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Unfortunately, Clark no longer has any available state court remedies with which to exhaust these claims. *See, e.g.*, Mich. Ct. R. 6.502(G)(1) (permitting a Michigan criminal defendant only one post-conviction motion for relief from judgment); *see also Gadomski v. Renico*, 258 F. App'x 781, 783 (6th Cir. 2007). When a prisoner fails to exhaust his claims, but can no longer present them to the state courts, "his petition should not be dismissed for lack of exhaustion." *Hannah v. Conley*, 49 F.3d 1193, 1195–96 (6th Cir. 1995). But a federal habeas court considers

the unexhausted claims only if the prisoner "can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal." *Id.* at 1196. A claim of actual innocence satisfies the "cause and prejudice requirement." *Id.* at 1196 n.3.

Clark failed allege any reason to justify his procedural defaults. Because Clark did not demonstrate cause for his procedural defaults, it is unnecessary to reach the prejudice prong. *Smith*, 477 U.S. at 533; *see also Malcum v. Burt*, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Nor did Clark present new reliable evidence to support an assertion of actual innocence. The Court cannot conclude, therefore, that a miscarriage of justice will occur if the Court declines to review the merits of Clark's procedurally defaulted claims. Habeas relief on claims V through VIII and X through XIII is not warranted.

VI.  Claim XIV: The Motion for Relief from Judgment Claim

Finally, Clark alleges that his motion for relief from judgment should have been granted by the trial court because the court officers should have known that his felony charge "had no bearing on his case whatsoever." ECF 1, PgID 47.

A federal habeas court possesses a duty "to safeguard the States' interest in the integrity of their criminal and collateral proceedings." *Guilmette*, 624 F.3d at 292 (citing *Williams v. Taylor*, 529 U.S. 420, 436 (2000)). The "duty to protect a state's interest in its procedural rules" is triggered when a federal court determines "that the state has decided a given case on a procedural basis." *Id.* Moreover, "errors in

post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (collecting cases).

The Michigan Court of Appeals reasonably found that the claims raised in Clark's post-conviction motion for relief from judgment were procedurally defaulted and that he did not show cause for failing to raise the issues on appeal. ECF 6-22. Clark's claim to the contrary is not cognizable on federal habeas review. *See Greer*, 264 F.3d at 681.

VI.    Certificate of Appealability and In Forma Pauperis Status on Appeal

To appeal the Court's decision, Clark must obtain a certificate of appealability. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate the denial of a constitutional right, Clark must show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

Here, jurists of reason would not debate the Court's denial of Clark's claims. The Court therefore denies him a certificate of appealability.

Moreover, the Court will deny Clark permission to appeal in forma pauperis because an appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Petitioner's petition for a writ of habeas corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that leave to appeal in forma pauperis on appeal is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 11, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 11, 2019, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager